Mr. Bruce A. Harris Interim Chief Counsel Palm Beach County School District 3318 Forest Hill Boulevard, Suite C-302 West Palm Beach, Florida 33406-5813
Dear Mr. Harris:
You ask substantially the following questions:
1. May the school board request district employees to voluntarily engage in lobbying the Florida legislative and executive branches, possibly during work hours, on issues affecting the school district?
2. Must the school board make a finding of school purpose for such lobbying activities?
3. May the school board expend school funds to lobby the Governor and Legislature on specific issues affecting the school district?
4. May the school district's designated lobbyist use the district's information services system to advocate a position?
5. May district employees lobby the state executive and legislative branches during working hours?
In sum:
The school board must determine whether lobbying activities directed to the Governor and the Legislature regarding issues impacting the district serve a "school purpose" for which school funds may be used. The same consideration must be given in determining the appropriateness of using computers, email, or other interschool and intraschool communications systems to advocate a position on issues affecting the school district. In light of the district's current policies, however, it would be inadvisable for the school district to encourage its employees to participate voluntarily in lobbying on behalf of the district during school hours.
Due to the interrelationship among the various questions you have asked, they will be addressed together.
Section 230.03(2), Florida Statutes, provides:
"In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law."[1]
The Legislature has recognized that district school boards possess "home rule" powers to carry on school business.[2] The home rule power of a school district has been found to be analogous to that possessed by a municipality and, therefore, the rules of law applicable to the exercise of municipal home rule powers are likely to be of assistance in analyzing the exercise of such power by a school district.[3] Thus, while a school district may exercise any power for school purposes except as expressly prohibited by general law or the Florida Constitution, in the event of a conflict between a state statute and a school district rule, policy or other form of legislative action taken by the district's board, the state statute will prevail.[4]
A review of the School Code reveals no express prohibition against the use of school funds to lobby on behalf of the district in support of certain legislation or issues, if the school board makes the appropriate legislative determination that such action serves a school purpose. Nor does there appear to be any other statutory prohibition against the school district using school funds to engage in lobbying activities.[5]
In Attorney General Opinion 88-52, this office was asked to consider a similar situation involving the expenditure of funds by a noncharter county for lobbying purposes. The opinion noted that a noncharter county has the authority to exercise any powers it deems necessary to carry on county government, provided the exercise of such power has not been preempted to the state and does not conflict with state law. It was concluded, therefore, that the county could use its funds for lobbying purposes if the board of county commissioners made appropriate legislative findings of the purpose of the expenditure and the benefits that would accrue to the county.[6] Similarly, a school district may expend funds for lobbying if the board makes the appropriate findings that such action serves a school purpose.[7]
Whether the school board implements a policy of encouraging district employees to participate voluntarily in lobbying efforts directed to the executive and legislative branches of the state is a decision that the board must make, based upon the same consideration of whether such action serves a valid school purpose. While not applicable to school districts, section 110.233(2), Florida Statutes, offers direction by prohibiting the "use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, . . . for the purpose of influencing the vote or political action of any person . . . ." Moreover, section 110.233(4)(a), Florida Statutes, precludes an employee in the career service from taking any active part in a political campaign "while on duty or within any period of time during which the employee is expected to perform services for which he or she receives compensation from the state."
A review of the Palm Beach County School District Policies reveals several provisions pertinent to district employees engaging in political activities. Initially, it should be noted that school board employees are prohibited from participating in any political activity while on duty, attempting directly or indirectly to coerce political activity or support from other school board employees, or soliciting funds from a school board employee on behalf of any candidate, party, or issue while on duty.[8] The policy states, however, that nothing prohibits a school board member or employee from performing statutory or assigned duties with respect to any issue directly affecting the school district or which is placed on a ballot by or at the request of the school board.[9]
The district's policies also address the use and distribution of political materials during school hours. Banned materials include those that are unconstitutional or illegal, that violate state fair election practices, or that in the principal's opinion pose the potential to disrupt the educational environment.[10]
Prior approval by the principal of manner, place, and time of distribution of political materials is required, but generally such materials may not be distributed in the classroom or during class time.[11] While political material may be placed in teachers' individual mailboxes by a candidate before or after school hours, no district employees may distribute political materials during their work hours and the use of interschool and intraschool mail for distribution of political materials to schools is prohibited.[12]
School district policies authorize employees to use information technology services for "assigned responsibilities" and "to enhance job productivity as it relates to District business."[13] The policies state, however, that "distribution" of political materials includes the use of email messages.[14] Thus, use of information technology services for the distribution of political materials would be subject to the restrictions discussed above. The school district, therefore, must make a determination of whether the use of information technology resources to promote the legislative agenda of the district falls within the approved use categories and serves a school purpose.
Ultimately, the school board must determine whether lobbying activities directed to the Governor and the Legislature regarding issues impacting the district serve a "school purpose" for which school funds may be used. The same consideration must be given in determining the appropriateness of using computers, email, or other interschool and intraschool communications systems to advocate a position on issues affecting the school district. In light of the district's current policies, however, it would be inadvisable for the school district to encourage its employees to participate voluntarily in lobbying on behalf of the district during school hours.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Article IX, section 4(b), Fla. Const., states that "[t]he school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein."
[2] See, e.g., School Bd. of Collier County v. Florida TeachingProfession Nat. Educ. Ass'n, 559 So.2d 1197, 1198 (Fla. 2d DCA 1990);Sulcer v. McFatter, 497 So.2d 1349, 1350 (Fla. 4th DCA 1986) (school board has full governmental authority).
[3] Id.
[4] Cf., City of Miami v. Rocio Corp., 404 So.2d 1066, 1069 (Fla. 3d DCA 1981), pet. for rev. den., 408 So.2d 1092 (Fla. 1981) (municipal ordinances are inferior to state law and must fail when conflict arises).
[5] See, Op. Att'y Gen. Fla. 97-82 (1997) (s. 11.062[2], Fla. Stat., restricting use of state funds for lobbying not applicable to school district).
[6] See also, Ops. Att'y Gen. Fla. 86-87 (1986) (county commission may expend public funds to publicly advertise its position in a referendum provided appropriate legislative findings of county purpose and benefits to county are made); 74-227 (1974) (municipal funds may be used to support position on annexation).
[7] Prior to the amendment of s. 230.03(2), Fla. Stat., by s. 7, Ch. 83-324, Laws of Fla., school districts did not possess the authority, nor were they advised it was appropriate, to engage in political matters such as advocating a vote for a proposed millage. See, Ops. Att'y Gen. 72-320 (1972) (school board may not expend public funds in order to obtain favorable support from the electorate or to "propagandize" the action of the board); 65-106 (1965).
[8] School Board Policy 6Gx50-2.59(1.), Palm Beach County School District.
[9] School Board Policy 6Gx50-2.59(3.), Palm Beach County School District.
[10] School Board Policy 6Gx50-2.59(7.)(a.), Palm Beach County School District.
[11] School Board Policy 6Gx50-2.59(7.)(b.), Palm Beach County School District.
[12] School Board Policy 6Gx50-2.59(7.)(c.) and (d.), Palm Beach County School District.
[13] School Board Policy 6Gx50-3.29(2.)(b.), Palm Beach County School District.
[14] School Board Policy 6Gx50-2.59(7.)(e.), Palm Beach County School District.